# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

KEVIN C.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 3:19-cv-05692-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). He contends the ALJ erroneously discounted two medical opinions and his testimony. Dkt. 19 at 1. For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 37 years old, has a high school diploma and some college education, and has worked as a sports coach, patient services representative, driver, and treatment attendant. Tr. 73-75, 284. In November 2015 and April 2016, respectively, Plaintiff applied for DIB and SSI, alleging disability as of October 16, 2014. Tr. 131-32, 260-70. His applications were denied initially and on reconsideration. Tr. 179-82, 188-200. The ALJ conducted a hearing on December 5, 2017 (Tr. 64-116), and subsequently found Plaintiff not disabled. Tr. 29-48. As

the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-7.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date.

**Step two:** Plaintiff's headaches, migraines, obsessive-compulsive disorder, and somatic symptom disorder are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Plaintiff can perform work at all exertional levels with the following non-exertional limitations: he can have occasional exposure to extreme noise, vibration, pulmonary irritants, and hazards such as heights and machinery. He can perform simple, routine, repetitive tasks. He can have occasional interaction with co-workers and the public.

**Step four:** Plaintiff could not perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

Tr. 29-48.

## DISCUSSION

**A.    Medical opinions**

Plaintiff contends the ALJ misevaluated two medical opinions. An ALJ's reasons to discount the contradicted medical opinion of an examining acceptable medical source must be specific and legitimate. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). An ALJ's reasons to discount an opinion provided by a non-acceptable medical source must be germane.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

*See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

**1.     C. Mark Anderson, Ph.D.**

Dr. Anderson examined Plaintiff in July 2016 and wrote a narrative report describing Plaintiff's mental symptoms and limitations. Tr. 499-503. Dr. Anderson noted Plaintiff reported experiencing migraines and opined his migraines "tend to disable him frequently." Tr. 502. Dr. Anderson also found Plaintiff's "social skills may be somewhat lacking[,]" but described Plaintiff as cognitively intact. *Id*.

The ALJ discounted Dr. Anderson's comment about the severity of Plaintiff's migraines as inconsistent with "medical evidence showing that [Plaintiff's] condition is managed effectively with his treatment regimen." Tr. 45. The ALJ also found Dr. Anderson's opinion regarding Plaintiff's social deficits is inconsistent with Plaintiff's demonstrated ability to interact with groups of people while coaching sports. *Id*. The ALJ, however, credited Dr. Anderson's opinion regarding Plaintiff's cognitive abilities. *Id*. Plaintiff does not challenge the ALJ's assessment of Dr. Anderson's opinion about his social limitations but contends the ALJ's reasons for discounting Dr. Anderson's opinion about Plaintiff's migraines is insufficient. Dkt. 15 at 5.

Plaintiff argues Dr. Anderson's comment regarding his headaches being frequently disabling reflected the doctor's understanding of the somatic symptoms, rather than the neurological basis for the headaches. Dkt. 15 at 5. Plaintiff accordingly contends Dr. Anderson credited the "somatic and compulsive sources to the headaches, non-neurological origins that would not be amenable to pain medications." *Id*.

Dr. Anderson's report does not support Plaintiff's argument. Dr. Anderson initially noted Plaintiff raised medical complaints as well as mental complaints; Dr. Anderson listed the migraines as a **medical** complaint. Tr. 499. Dr. Anderson is a psychologist, and did not review

any medical records regarding Plaintiff's headaches. *Id*. Dr. Anderson himself noted his lack of context for understanding Plaintiff's headaches, in stating "given the extensive somatic complaints, medical documentation needs to be reviewed regarding the chronic headaches." Tr. 501. Plaintiff's suggestion Dr. Anderson found a psychological origin to Plaintiff's headaches is thus unsupported. Because Plaintiff has not shown the ALJ erred in finding Dr. Anderson's opinion is inconsistent with the relief (albeit not total) Plaintiff received from his migraine treatment, the Court affirms the ALJ's determination.

### 2. Jamie Nixon, PA-C

Ms. Nixon, Plaintiff's primary care provider since 2010, completed a medical source statement regarding Plaintiff's headaches in September 2016. Tr. 541-44. Ms. Nixon opined Plaintiff required, *inter alia*, unscheduled breaks averaging 20 minutes at least hourly during a weekday, and plaintiff would be off-task while at work 25% of the time or more and miss more than four days of work per month. Tr. 543. The ALJ summarized Ms. Nixon's opinion and found it to be inconsistent with the records showing (1) Plaintiff's conditions were "effectively managed with his extensive treatment regimen[;]" (2) Plaintiff's neurological examinations were normal and he consistently demonstrated intact cognition; and (3) Plaintiff engaged in a full range of social, physical, and coaching activities. Tr. 43-44.

Plaintiff argues the ALJ erred in discounting Ms. Nixon's opinion due to inconsistency with the record because, as a primary care provider, Ms. Nixon "should be presumed to be better informed on interpretation of the record as a whole, especially her own referrals and records, than the lay ALJ." Dkt. 15 at 7. Specifically, Plaintiff argues the record establishes treating sources credited Plaintiff's reports of headaches, and Ms. Nixon herself recorded his reports of symptoms caused by headaches. Dkt. 15 at 8. However, the ALJ did not find Plaintiff did not

experience headaches or he had no headache-related symptoms. The ALJ cited the multiple treatment records indicating Plaintiff experienced some degree of relief with Botox treatments, as evidenced by his reports of improvement and Plaintiff's indication he wished to continue Botox treatment. Tr. 36-41. Plaintiff did continue to report experiencing some headaches, even with Botox treatment, and the ALJ explained why he found the symptoms caused by those residual headaches to be less limiting than alleged. Tr. 41-43. That Ms. Nixon was a treating provider does not imbue her opinion with unassailable probative value: an ALJ may discount a treating provider's opinion if it is inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Plaintiff also argues his intact cognition is not inconsistent with Ms. Nixon's opinion he would be off-task at work, because he would be off-task based on headaches, fatigue and medication side effects, rather than a cognitive impairment. Dkt. 15 at 9. First, Ms. Nixon did not identify these factors as the causes of Plaintiff's off-task behaviors. Plaintiff's argument also ignores the content of the form opinion: the form asked Ms. Nixon to opine how often Plaintiff's symptoms would be severe enough to interfere with the attention and concentrated needed to perform even simple work tasks. Tr. 543. Plaintiff's psychological testing measured his concentration abilities (*see, e.g.*, Tr. 501-02, 946), and these relate to the question on the form. The Court accordingly concludes Plaintiff has failed to establish the ALJ's inference is unreasonable or unsupported.

Lastly, Plaintiff contends his activities do not contradict Ms. Nixon's opinion because his coaching was not SGA, and was performed only for fun and on his own schedule, and is thus unlike work activity. *Id.* That Plaintiff's coaching work did not rise to the level of SGA does not mean that it could not be found to contradict an allegation of disabling symptoms. *See, e.g.*,

20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not [SGA], it may show that you are able to do more work than you actually did."). Further, Plaintiff did perform his coaching work on a set schedule, and the ALJ explained why he found even if Plaintiff had to miss some practices due to headaches, the amount of coaching work Plaintiff performed was inconsistent with the limitations he described. *See* Tr. 42. This inference is reasonable based on the number of teams Plaintiff coached: although Plaintiff's brief describes his coaching work as being performed "purely voluntarily at Plaintiff's pleasure" with no obligation to perform for any reason other than fun, with "no standards of performance or measures of success", this work was paid to some extent and indeed performed on a schedule, albeit perhaps with some flexibility. Dkt. 20 at 6. Plaintiff's attempt to downplay the requirements of his coaching jobs do not establish the ALJ's description of the work was inaccurate or unreasonable, and therefore Plaintiff has failed to show that the ALJ erred in finding Plaintiff's activities to be inconsistent with Ms. Nixon's opinion. The Court accordingly affirms the ALJ's determination to discount Ms. Nixon's opinions.

**B.      Plaintiff's testimony**

The ALJ discounted Plaintiff's testimony because (1) the medical evidence showed Plaintiff's headaches were managed effectively with medication and Botox therapy; (2) the record does not corroborate the cognitive and social limitations claimed by Plaintiff; and (3) Plaintiff's alleged limitations are inconsistent with his coaching activities and other activities such as self-care, cooking, household chores, driving, shopping, fishing, socializing, and serving as a part-time councilman at Southern Pacific College. Tr. 41-43. An ALJ's reasons to discount a claimant's testimony must be clear and convincing. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

1 | Plaintiff challenges some of the ALJ's reasoning, arguing his coaching activities do not
2 | contradict his allegations because he alleged a need for extra breaks and time off work, which his
3 | flexible coaching schedule allowed. Dkt. 15 at 10. Furthermore, Plaintiff disputes whether
4 | Botox therapy was effective treatment because it only reduced the pain but did not entirely
5 | resolve the headaches. *Id.*

Plaintiff's contentions do not demonstrate the ALJ erred. The ALJ acknowledged Plaintiff's claim that his coaching schedule was flexible enough to accommodate his need for extra breaks and time off work, but the ALJ found even if that is true, Plaintiff's "ability to juggle multiple coaching responsibilities at once leads me to infer that his conditions are not as limiting as alleged." Tr. 42. This is a reasonable inference, given Plaintiff alleged, for example, at the time of the administrative hearing that he recently coached a middle school soccer team as the sole coach, with 4-5 practices and two games per week. *See* Tr. 88-89. The ALJ's summary of the various basketball and soccer teams Plaintiff coached supports the ALJ's inference coaching these teams "strongly indicates that he is capable of work activity and that his conditions are not as debilitating as alleged." Tr. 41-42.

Regarding the efficacy of Botox treatment: Plaintiff emphasizes the Botox injections did not entirely relieve his headaches; however, the record supports the ALJ's finding the Botox treatment was effective in reducing the severity and frequency of Plaintiff's headaches. *See, e.g.*, AR 431, 435, 439, 454, 492, 631, 637, 646. Even if Plaintiff did continue to experience headaches to some degree, the ALJ cited substantial evidence showing Plaintiff was nonetheless not as limited by those residual headaches as alleged, either physically or mentally, based on his activities and his objective testing. Tr. 41-43.

Because the ALJ's determinations are legally valid, supported by substantial evidence and based on reasonable inferences, the Court concludes Plaintiff has not shown the ALJ erred in discounting his allegations based on inconsistency between his activities and his alleged limitations and improvement with treatment. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (contrary to plaintiff's claims of lack of improvement, physician reported symptoms improved with use of medication).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 14th day of February, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge